May it please the Court, I am Doug Olson. I am an attorney with the Federal Defender's Office here in Minnesota. I was appointed to represent Erik Becerra over his objection in the proceedings below, and I have continued to represent him on appeal here. This case presents a couple of issues related to the civil commitment proceedings against Mr. Becerra, starting with the issue of his right to self-representation. Mr. Becerra, in my initial appearance with him in these proceedings, voiced his intent to represent himself, leading to further proceedings, and that's where we kind of start with this. I'm going to briefly address the government's, quote-unquote, waiver of this issue to highlight a couple of things, because we believe the issue is preserved and this Court should rule on it. I will note that this matter was brought to the Court's attention, briefed, and litigated, and over Mr. Becerra's objection, it was determined that I would have to represent him over his objection at the commitment proceedings. At the start of those commitment proceedings, I once again reiterated that when I was proceeding, the client next to me didn't want me to represent him, that I renewed my objection, and the Court indicated the following, understood there was an earlier proceeding in the Court and order filed October 15th, did not deny that, his right to self-representation. Mr. Becerra, your objection is noted, so if you want to take this to a higher court and say that it was wrong to go ahead over your objection, everything procedurally that needs to be done to let you do that has now been done. So Mr. Becerra was assured by the district court itself, the magistrate judge, that his objection to me representing him was preserved and cool. So you don't say that you don't think there's a preservation issue? No, and it follows up. First of all, the government didn't object there or say there's a problem there, but in following up in the objections to the report and recommendations, we black and white brought it to the district court's attention twice, page 1. In addition, Mr. Becerra renews his objection to not denying him self-representation, maintains the entire proceeding. But what on the merits was wrong about the district court's decision to deny self-representation? And so we brought it up on page 1 and 11 of our objections. We did raise it to the district court. How come you didn't mention it after page 1? The rest of it goes into argument, the big argument section, and you never come back to why it was wrong. It had been briefed by both parties, and that wasn't... So had all the other issues, but the only ones you argued were the merits. Well, I guess that may have been a strategic decision or not, but I renewed the objection. Well, I guess that's the question. Is it renewed if it's mentioned on page 1, but never argued? Well, I mentioned it again on page 11 at the end. I said I renewed the objection, and it's a very fast page. I once again renewed the objection, stated that that issue is being raised again. Well, go ahead, Judge. So at least we bookended it in our objections in a case where Mr. Becerra didn't want me to represent him in the first place. I think the issue is preserved. The court certainly knew about the issue when we brought it to the court's attention. On the issue itself, in terms of the merits, the question here, you know, Mr. Becerra suffered from these delusional disorders. That didn't mean he was incompetent to represent himself at the hearing that he wanted to do. And the question of competency, you know, you have a right to self-representation, and that's pretty clear. And the question then is, was it appropriately determined that he was so incompetent that he couldn't perform the basic tasks of representing himself? We think that that was an erroneous decision by the judge. Focused on the wrong analysis, really focusing on his delusional disorder, which he has, as opposed to whether he was competent to proceed to the basic task before the court. I note that in the Olivera's case, there was no error. That person represented themselves and then later claimed that that was error, despite illogical and irrational statements, filings, and questions. And that person represented themselves to no error. And it's appropriate to look at what happened in the Veltman case. I think that that would have been the appropriate way to handle this thing, is that Veltman was schizophrenic and had paranoid, grandiose delusional thinking, and he was permitted to represent himself at his 46 proceedings with standby counsel. And I believe that that would have been the appropriate and better approach, which is typically, oftentimes, how these things are handled in criminal matters. And I don't know that there was any particular reason to force my representation on Mr. Becerra, because he had these delusional beliefs. He certainly was capable of articulating questions, filing motions, and doing the basic stuff of representing himself. And it was his, it was, that was his decision. It might not be a perfect representation. That's not the question. The question is whether he was capable of waiving his right, which he did, and he was inquired about it. The court should have permitted him to represent himself. And the court's decision in that regard, we believe, was erroneous. Concerning the, unless the court has any questions about that, concerning the merits of the case itself, the question, and this almost relates back to the question of his whole delusional belief, which is what the court focused on in denying him his right to self-representation, is that it's the same thing that comes up in the civil commitment context, is that Mr. Becerra, his, that's really his mental health problem was this delusional belief. He didn't have a particularly extensive history of violent behavior, and he had to go really back in the time, 10, 20, 10 to 15 years to get into violent acts to find instances of violent violence. There was instances. Weren't there some in the prison? There was one instance where he kicked a guard over some, over something. And I know... That was two months before the petition was filed in this case? Before the petition was filed, and it was... Right. And one month before the doctors met. Yeah. It was November, December, January. Exactly. And then this hearing takes place, you know, a year and a half later, and the time is a little bit problematic because the question at the commitment hearing is where are you at presently, right? And it's also noteworthy that when he kicked the guard, and that seems to be his only real instance of institutional problems, is that he hadn't been medicated yet. Once he got on medication, you know, he was medication compliant, and he had sometimes indifference opinion. But he's taken his medication, and by the time of the hearing, as Dr. Klein testified, I mean, he wasn't causing any problems, you know, he wasn't misbehaving. He just continued to have these... But didn't the district court have concerns about whether he had the kind of support and structure that would permit him to remain medication compliant? Yeah. That may have been a legitimate concern, but I think the question is that that's not a legitimate order itself that he presently presents a danger to the persons or the community, but it's really a question of monitoring him, both in terms of... And that's true, both of you had been released from... Counselor, what do you do with our cases that say any activity can be considered in recency or remoteness only goes to wait? What do you do with... I bet you know the cases I'm referring to, D'Alesta and Evanoff. What do you say to those cases? Well, you give it less weight the more remote it is. I mean, you have to look at a person's entire... You probably have to look at most of their life. We do that both in sentencing and I think it's appropriate here. You got to look at what the pattern is here, but if you look at the last 10 years plus, Mr. Becerra, he wasn't engaged in some constant problem. We see all kinds of people, and I do a lot of the commitment work, and I'm here frequently at cases where you see people that are just violent people. They're just bad. They fight, fight, fight, and his institutional behavior was pretty mild. He was peaceful, easy to get along with, so he didn't have the kind of aggressive behavior you see in a lot of people, and a lot of people you see in these commitment proceedings, the schizophrenics, which are just all just juiced up. He just doesn't have that. He's got this delusional disorder, which is certainly unusual, but he doesn't have a lot of the characteristics you find of a lot of people that we end up with these commitment proceedings. Just make one last note, is that I think it's also appropriate to look at the underlying offense here. So this isn't a person... The underlying offense here, which I think was subject to a separate appeal up here, is that he brought a gun to his probation officer. There was some dispute there, but he wasn't out using the gun and causing a ruckus. He had driven up to the courthouse and notified his probation officer there was a gun in the car, as I recall, and that's what the case is about. So the underlying offense, you know, people falling shouldn't have guns. We all know that. We're dealing with that every day on a daily basis in our office, but Mr. Basir is turning the gun in, and that's how this all started, you know, 10-plus years ago. Thank you. I'm into my rebuttal time, so unless you have any questions for me, I'll reserve. Thank you, Mr. Olson. Mr. Tweeden. Good morning, Honorable Chief Judge and Circuit Judges. May it please the Court, I'm Assistant United States Attorney Andrew Tweeden, represent the United States, the appellee before this Court, and the petitioner to the Court below. There's no dispute that Mr. Basir is a person with severe and persistent mental illness. Based on the documentary evidence, the Bureau of Prisons Risk Assessment, and the only expert evidence of record, the District Court correctly concluded that due to his mental illness, Mr. Basir's release would create a substantial risk of bodily injury to another person or serious damage to the property of another. This Court should affirm that decision. I'll present three arguments today. First, that the Court lacks jurisdiction to review the magistrate judge's order on Mr. Basir's request to proceed by self-representation, because there is no order of the District Court to review on that point. Second, setting aside that jurisdictional question, the magistrate judge's order denying Mr. Basir's request to proceed by self-representation was correct and should be affirmed. And then third, turning to the merits, that the District Court was correct to order Mr. Basir's civil commitment under Section 4246. First, on jurisdiction, there's no jurisdiction over the magistrate judge's order denying Mr. Basir's request to proceed by self-representation. Of course, this is a gateway question. Every court must convince itself and assure itself of its jurisdiction before proceeding in any cause. And under 28 U.S.C. 1291, this Court's jurisdiction, of course, extends to final orders of District Courts. There's no such order here on the magistrate judge's order denying Mr. Basir's request to proceed by self-representation. No objections were filed to the magistrate judge's order. That's ECF number 22 in the docket below. And on this nondispositive preliminary question of Mr. Basir's request to proceed by self-representation, under 28 U.S.C. 636, the Magistrate's Act and Rule 72A, Mr. Basir may not now assign error to the magistrate judge's order without first having objected to the district judge. This is a fundamental jurisdiction question in this Court. What about the objections in Document 42? Why are they not sufficient? Because at that — well, first of all, they're not timely. If it sufficiently raises the question, it's not within 14 days of the magistrate judge's order. So it doesn't satisfy the requirement under Rule 72 that to preserve an objection, you must present it within 14 days of the order. Because he waited until after the second recommendation? Is that your point? That's right. Yes. Yeah. Because the second one was about the merits of the hearing. Correct. But it referred back to the earlier order. But you're saying he needed to object at the time of the — That's correct, Your Honor. The timing of the first order is — it's a nondispositive pre-trial matter. The magistrate judge is considering under Section 636. And under Section 636 in Rule 72a, if you have an objection to a nondispositive pre-trial order of a magistrate judge, in order to preserve it, you must present that objection within 14 days or else the issue is waived. And that's fundamental under this Court's decisions in Haley dating back to the 70s and reasserted again in the McDonald case that's outlined in our brief as well. The issue becomes that the district judge does not have an opportunity to pass upon the magistrate judge's order before it becomes final. And at bottom, as a policy matter, is an issue of judicial economy, right? The need to contest that in the moment. And rather than having sort of piecemeal litigation of those issues, there's an interest in finality and an interest in a judicial economy that's served by Rule 72 and by the formulation of the Magistrates Act that requires that timely objection. And this is a jurisdictional question. This Court has treated it as such in McDonald and also in cases related to — related to civil commitment proceedings in particular. If you look to United States v. O'Loughlin, this is 31 Fed 4th, 1042, there the Court notes that the magistrate judge entered an order rather than a recommendation, which is the same as what happened here, denying motions on the grounds that O'Loughlin could not bring a motion for discharge pro se. And then notes again that the order of a magistrate judge is not a final decision of the district court that may be appealed to this Court. Do you have any case like this one where the objection was made at a — to a later order where the Court has addressed whether that's untimely? I don't. And I don't have one off the top of my head that I can refer the Court to. Okay. I just wondered if it's come up in that posture. Go ahead. Certainly, Your Honor. Like I said, there's an interest in finality and interest in — So I understand. Yeah. I've heard what you said about that. I just wondered if there's a case. Yeah. So setting aside that jurisdictional concern, the magistrate judge was correct to deny Mr. Becerra's request to proceed by self-representation. The magistrate judge concluded Mr. Becerra is manifestly not able to do the basic tasks needed to present his defense unassisted by counsel, and this alone is dispositive of his request to waive counsel and represent himself. Contrary to opposing counsel's representation, this is not a per se indication that Mr. Becerra can't represent himself because he has delusional thoughts. Rather, the magistrate judge undertook a detailed analysis of the facts of record and concluded, based on Edwards and other authority, that Mr. Becerra lacked the capacity to functionally perform the tasks of self-representation. That analysis was correct and should be affirmed. The factual conclusions the magistrate judge reached about his capacity to undertake the tasks of representation are reviewed for clear error under Viltman. So I want to focus on that standard of review, and that standard of review is important in this case because the appellant here has not demonstrated that no reasonable fact finder could conclude in the manner that the magistrate judge did here. The standard of review here is very deferential on that fact question as to whether Mr. Becerra has the functional capacity to proceed by self-representation. The magistrate judge cited Mr. Becerra's impertinent and delusional comments presented as argument at hearings before the Court in May and October of 2021, statements that he's a judge, that he executed Osama bin Laden by decapitation, that he invented jet turbine engines, ammunition, and medication. From these delusions, which he stated on the record as argument, the Court concluded that Mr. Becerra would not be able to perform the tasks of representation or make appropriate use of standby counsel. So this stands in stark contrast to what happened in the Viltman case. And addressing Viltman, first of all, it does not set forth a per se rule that a party may waive counsel in a civil commitment proceeding. Rather, it indicates that in the context of the facts presented, that waiver was appropriate. Additionally, Viltman is a 4245 proceeding. It is not a proceeding under 4246. That's an important distinction because a 4245 proceeding is an individual who's being transferred to a bureau facility prior to their release for treatment, whereas a 4246 is an individual who is due for release and being committed to the custody of the Attorney General after their time has expired. It's important also to note differences between Mr. Becerra's conduct and capacity and Mr. Viltman's conduct and capacity. Mr. Becerra does not have the educational background that Mr. Viltman had. Mr. Becerra does not have the ability to engage with standby counsel the way that it was evident that Mr. Viltman could. And finally and most importantly, and this is an important factor that's drawn out of Viltman as well, Mr. Becerra was not capable of conducting himself appropriately in court, whereas Mr. Viltman did so in each of the hearings that he was present for. So those are important differences between the respondents to the civil commitment proceedings at issue in Viltman and here in Mr. Becerra's case. And there are differences that lead to a different legal conclusion and appropriately lead to a different legal conclusion. The takeaway from Viltman really is that the requisites to waiver of a right to counsel in a civil commitment proceeding varies based on the context in which it's invoked. I'll move on to the merits of the commitment order. The district court was correct to grant the petition and order Mr. Becerra committed to the custody of the Attorney General. Because he's a person with mental illness, that's not disputed. And his release would pose a danger to the person or property of another. Again here, the district court's fact finding is reviewed for clear error. Conclusions of law are reviewed de novo. Each element of the case for civil commitment was plainly met on the record below. The only record testimony supports or only expert testimony in the record supports that Mr. Becerra would be a danger if released. I want to respond to a couple of things from opposing counsel's argument. First, the representation that Mr. Becerra was not violent. The bench correctly noted that Mr. Becerra had a violent episode shortly prior to his panel interview in this case. And representations that he was relatively placid while incarcerated are also incorrect. There are a couple of different instances of violent outbursts against other inmates while he was incarcerated on the underlying offense that opposing counsel did not mention. And those instances and the instance where Mr. Becerra kicked the guard, both are directly linked to his mental illness. He persisted in delusions that the guard had done something inappropriate and acted on that delusion by kicking him. And with respect to the instance with the other inmates, he believed that they were, again, acting on delusions, that they were part of a cartel and were after him. And assaulted them, I think, in both instances in the cafeteria. These are strong probative evidence from which a fact finder might conclude that an inmate poses a danger if released. We also don't need to look to the record for support for that proposition. We can look to Mr. Becerra's statements themselves. He assured the Court on more than one instance that he has a license to kill, that there is no way other than to kill, that he cannot be told he cannot own a gun, that he will not comply with the requisites of supervised release, and he'll leave that question to the world court to decide. These are clear indicia that he suffers from a mental illness and that he would be a danger to personal property if released. This is precisely the type of case that calls for civil commitment because he has a detailed history of violent and dangerous conduct, poor insight into his condition, and poor compliance with medication. We need not, as opposing counsel suggests in his brief, release Mr. Becerra and permit him to pose a danger to the community and then go back and correct the issue. The civil commitment statutes exist for this primary purpose, to ensure the public is protected from people like Mr. Becerra. Finally, I want to talk about the underlying offense briefly. Mr. Becerra's counsel represents that it was not a violent offense. I addressed this in the brief. That moves the goalposts in some respects, right, because Section 4246 talks about dangerousness, if released, not necessarily violence. And certainly, while there may be some dispute as to whether the underlying offense conduct was itself violent, it certainly was dangerous. Mr. Becerra possessed a weapon. He indicated when he turned it in that he had driven around the airport in fear that he was being chased by the cartel and with the weapon in his possession and then also possessed the weapon and ammunition in a Wal-Mart store. Those are certainly dangerous actions and certainly evidence that the Court could conclude that he would pose a danger if released. So through that deferential lens of clear error, the Court did not err in finding, as a matter of fact, that he would pose a danger. And there's no legal error in taking that conclusion to its logical legal conclusion that Mr. Becerra should be committed to the custody of the Attorney General. Say, I have a question going back again to the waiver of counsel matter. Does the government have a position on whether a party has a right under the Sixth Amendment to waive counsel in a 42-41 proceeding? You know, the magistrate judge said the Sixth Circuit and the Ninth Circuit have held there is no such right. And the magistrate judge seemed to think that was the better view but thought he was bound by Veltman to consider the question and treat it as though there is a right. I'm not sure whether Veltman really holds that there's a right. Veltman was a case where the district court had allowed a waiver and then our court said that the defendant had no valid argument that he couldn't waive it. But that's the opposite or that's the flip side of whether he has a right to waive. Anyway, that's a long windup, but I'm wondering if the government has a position on this legal issue. I don't have an articulable position on that legal issue. It's not presented by this case, the 42-41 question. Well, it should be presented. It could be presented. If you'd argued it well, you could have said even if they objected properly, he has no constitutional right to waive, so he loses on that ground. I see I'm out of time, but if I may respond briefly. You may respond. Two things of note. First, under this Court's precedent, the Sixth Amendment does not apply in the 42-46 context. That's the O'Loughlin case. It's not cited in the briefing, but it is, I'll give you the case site here in a second if you'd like. We know O'Loughlin. Yeah, 934 Fed Third 840, where this Court holds that civil commitment proceeding under 42-46 is not a criminal prosecution and by its terms, the Sixth Amendment doesn't apply.  So why would Feretta apply is the question. Well, I think writing on a clean slate, which admittedly we're not, because Veltman exists and sort of colors this analysis somewhat. Well, I don't know what you mean by colors, but does it decide it or not? I don't think the issue is decided definitively by Veltman, no, both because it's a 42-45 and not a 46 proceeding, right, and also because it merely blesses the waiver in the context of that specific respondent. Right. And the guy there was not arguing I have a right to waive. He was arguing I didn't waive. Correct. Yeah. So it doesn't state a rule. It merely states that the waiver is in the context of that. So that's my question. Does the government have a position on whether the right is, whether the party in a commitment proceeding has a constitutional right to waive? Because if he doesn't have a constitutional right to waive, none of this is relevant. None of this argument about whether he properly waived is relevant. I would refer back to the statute that the statute has a statutory requirement that the party be represented by counsel. And that's the argument that I made to the magistrate judge as our first argument out the gate, that the statutory right controls and requires representation by counsel. To the extent that Veltman holds to the contrary, then I think you can engage in sort of the Indiana v. Edwards analysis. Is this person functionally capable? But writing on a clean slate. You don't really have a position. The government doesn't really have a position. Not as a categorical matter. The magistrate judge raised the issue and said to other circuits, said there's no right. I see no reason to disagree with those questions. We haven't staked out that position as a. . . No, Your Honor. I don't think it's a question you have to reach. We don't have to reach it because you think there wasn't a proper objection. That and the Sixth Amendment doesn't apply plainly in this context. So the question would just be, you know, is the statutory right waivable or not? Under Veltman, it appears it may be. But, again, that's a 4245 proceeding, not a 46 proceeding. All right. Well, I've extended your time. Understood, Your Honor. For the reasons stated, we encourage you to affirm the judgment of the district court. Thank you. Thank you, Mr. Tweeden. Mr. Olson, your rebuttal. Well, proceeding under the authority of Veltman and just looking at the other cases, I guess we proceeded with, from our perspective, on behalf of Mr. Baseri, that he did have a right to represent himself, and that also derives in part from. . . Is that a Sixth Amendment right or a statutory right? I'd say both. I would go both. What in the statute gives him a right to represent himself? The statute says the opposite. Well, the statute says you have a right to a lawyer. It doesn't say you don't have a right to represent yourself. But you just claimed it gave him a right to represent himself. Well, I guess you have to interpret it. But maybe my answer is that since there's a constitutional right to self-representation, including the civil commitment proceeding, that would be. . . Well, then the question would be, why is there a constitutional right to represent yourself? Why would Feretta apply in a civil commitment proceeding, particularly since we've said the Sixth Amendment doesn't apply? Yeah. Well, it's the same type of analysis. You have to go back into the cases looking at the longstanding tradition of letting people represent themselves and having self-representation. The same arguments and principles would apply in a civil commitment practice, that a person would want to represent himself, they can't be forced on to have somebody else do your claim for you. So it would be the same arguments. Now, fortunately, we didn't focus in on the underlying briefing about the issue. I understand the issue. But our position, of course, would be is that he had a constitutional right to represent himself and that that was violated here. I just want to hark back on a couple of little issues here I got. It seems to me, you know, we pointed out black and white, we objected to the court's order denying himself representation in the R&R. Maybe that's a question of timing as opposed to something else. Maybe I'm at fault for not doing it earlier or something, but it brought it to the court's attention. As to Mr. Becerra, when we sat down for that hearing, Mr. Becerra didn't want me there. All right? He's right there in the courtroom and he says, I'm going to represent myself. And so we started things off by reiterating that he wanted to represent himself. Mastery judge looked at him and he said, and Mr. Becerra, your objection is noted. You want to take it to a higher court and say it was wrong, go ahead. Everything procedurally that needs to be done to let you do that's been done. So that's as to Mr. Becerra. That's his right. I think the right as to Mr. Becerra is preserved, even if there's a question of some timeliness. I think that's far more of a substance. It's here for the court to review. And on the issue of self-representation, I think the problem here is that the court's focus and even the government's focus on his delusional beliefs at the two proceedings, he wasn't trying to represent himself. He had an opportunity and he liked to talk about these things and he had a tendency to do that. But that didn't mean that in the underlying ability to function as a lawyer that he was incompetent. He could ask questions. He could formulate a plan. He could file motions. And he could represent himself. So I don't believe that he was in such a dire situation that he couldn't represent himself and he shouldn't have been able to represent himself. So it was error to deny him self-representation. The issue is preserved and the court should remand this case for a new proceeding during which he gets to represent himself as he continues to request. Thank you. Thank you, Mr. Wilson.